and Doug Anderson. May it please the court, Mr. Casella, Mr. Burke, Mr. Taylor, and Ms. Bala. My name is Doug Anderson. I'm appearing on behalf of the state of North Dakota regarding an appeal from a bankruptcy court, denial of our proof of claim in a bankruptcy proceeding. This case has a very long history, as everybody knows. It's gone through a number of litigations since the petition was filed in 2004. But what happened in 2014 and then in 2015 was the district court, and then again affirmed by the 8th Circuit, was the decision that the state of North Dakota did not have the authority to tax account wagering through the activities of Race and Service, Inc. As a result, the state was ordered to return the account wagering taxes, as they're called, to the bankruptcy estate. And that resulted in the return of about $16 million to the bankruptcy estate. And despite the fact that the 8th Circuit ordered the return of these funds, it also made the statement that, and maybe dicta, but it says, without the assessment of taxes, more money is available for beneficiary purposes. So in doing so, the court recognized the state's concern that the wagering was supposed to have a charitable purpose in the end, and funds were supposed to go to the And what happened was, PW, the major creditor of RSI, filed an amended claim for about $10 to $11 million, and seeking basically to go after a significant amount of those proceeds. And with PW's claim, that amount was denied. So it opened up an opportunity for surplus funds. And the way the state read the, in this case, the take-out or bet payoff formula, was that before those should go to the debtor, in this case, RSI, and its principal, Ms. Bala, that the charitable organization should have an opportunity to recover those funds, that they were next in line under the way the money had been calculated previously to be distributed. So what the state did was they filed a proof of claim on behalf of eligible organizations. And as a result, Ms. Bala, as well as the trustee, objected on basically three grounds to that proof of claim. First of all, they objected to it, claiming the claim on behalf of the eligible organizations. And as a result of that objection, the state obtained a consent and assignment agreement from TeamMakers, which was the primary, if not the only, eligible organization that conducted the account wagering activities. And as a appeal, the standing issue is necessarily a primary concern. It's more the court's rejection of the TeamMakers claim on behalf, on the basis of latches. The court... Mr. Anderson? Yes. This is Judge Shobine. I want to go back to a statement you made that was apparently something in the Eighth Circuit opinion, where the court, you say, recognized a, quote, Was it used in the context of charity, or was it used in the context of, you know, if the funds go back into the estate, there are beneficiaries of the estate that would also ignore from these funds that were coming back in. I guess when I've read these cases, I haven't seen anything where the Eighth Circuit really stated that that's the purpose that those funds would be put to. Can you clarify that for me? Your Honor, I believe it's what a person takes, or the state takes away from that reading, is that we made the strong argument, or we made the argument at least, that there is a constitutional provision that the charitable gambling proceeds should go to charitable organizations, and that was the constitutional allowance for this wagering. And that was the argument we made before the Eighth Circuit, was that the constitutional provisions, as And the court made this comment, which the takeaway from the state is that the court was recognizing, okay, if the taxes go back, there's a recognition that they should have some sort of, it'll increase the beneficial purposes. And that's our reading of the Eighth Circuit's decision. Okay, thank you. Okay, so as I mentioned, with the focus on team makers and the consent and assignment agreement, the state does not believe that standing is necessarily a primary issue, because it would probably preclude jurisdiction as far as decisions on the latches as well as the substance of our claim. So what the bankruptcy court did was they decided the team makers based on latches. And in doing so, Ms. Balla, in bringing that defense, did not elaborate which category of 502B she was bringing that defense, nor did the court state what provision or exception that was covered under. But in the briefing, they came out and said it's under 502B1, which addresses defenses that were defenses to the enforceability of the claim at the time of the petition filing. But everything in the bankruptcy court's order went to post-petition matters. And the state's position, as supported by case law, that 502B1, those are all pre-petition. And again, like I said, everything the court relied on was post-petition. So it's our position that the 502B1 defense under latches does not apply in this case. And rather, the court should focus on what the trustee has brought forth to the defense. That being that the claim fails to state a claim for relief. And in bringing this, again, the state was prompted by the Eighth Circuit's statement recognizing that these money should go for a beneficial purpose. And one of the things the court noted along the way, in dealing with PWE's claim, is that the contracts in that matter did not address what should happen when surplus funds like this were returned, how they should be distributed. So the state focused on the statutory provision under 5306.211. It's called the take-out statute or the The issue that's been raised by Ms. Bala and the trustee is that that has no application because the Eighth Circuit found that it did not authorize taxation on account of wagering. But nevertheless, it's the way the funds were distributed originally. It's the only practical common-sense formula to rely upon in paying out these funds. And in fact, Ms. Bala relied on that exact provision in claiming that she's a taxpayer for purposes of claiming the money. So our interpretation is that the take-out statute, in particular Subsection 5, which talks about the priority of the charitable proceeds, applies in this case. Mr. Hansen, this is Judge Dow. Doesn't what you're talking about now relate to the merits of the claim, which the bankruptcy court did not get to and is unrelated to either of the procedural issues we have in front of us, which are the standing and latches arguments? That's correct. And again, the state doesn't believe that the standing is a primary issue because of the fact that the bankruptcy court did carve out the team makers, the primary operator and the participant in the account wagering as it said, arguably we have standing respective team makers. And therefore, the court went on to address that under latches. And so we've addressed latches within our opening and then against our reply brief. But I think the trustee, and I don't want to advocate what their motive was, but they moved on saying this should be affirmed, that it can be affirmed on other grounds and the You're suggesting that we should rule on the merits of the claim despite the fact that the lower court has not done so? Well, I think it'd probably be more efficient as far as the economics of the court proceedings to go to the substance of the matter. Otherwise, we may have an appeal on a procedural issue and go from there. We may come back to the bankruptcy court just to determine the substance of the matter. I don't think at this point... Mr. Anderson, this is Judge Chauvin. I'm going to interrupt you because I think what I'm confused about, and it goes to Judge Dow's question, is you specifically cite in your claim is on the pre-petition enforceability, not post-petition enforceability. And I think that whether latches applies or whether there's a standing issue, it doesn't appear to me that there's anything in the record to demonstrate that the state of North Dakota has established its right to file a claim for an obligation owed on the date of the bankruptcy filing. In other words, a debt that arose pre-petition. And so, I'm confused about how we could rule on the merits before that is presented to the bankruptcy court. And I guess that, you know, whether or not latches applies or whether or not there's a standing issue goes to whether or not you can move forward to even establish the claim. So it seems like there's a step that still needs to happen in front of the bankruptcy court. Isn't that correct? Well, Your Honor, we believe that there was a consent and assignment agreement executed after the objections were filed and before the hearing on the matter. Well, but just because team makers assigned you a claim doesn't mean it's an enforceable claim. I think, doesn't that still need to be determined by the bankruptcy court? Well, I don't think the enforceability of that consent and assignment was contested by any party nor by the court. I'm talking about the underlying debt that team makers assigned to you. Just because somebody gave you an assignment doesn't mean that the obligation represented by that assignment is enforceable, does it? Well, then that goes to the enforceability of that on the date of the filing of the bankruptcy goes to the merits of the claim. You know, we back up and look at what was the enforceability on the date of that claim, set aside any idea of latches or delay, what was the enforceability of that date, and I believe that the trustee at least would say that's where we get to the point where does this fail to state a claim upon which relief can be granted. Was there an obligation on RSI to pay these funds or the bankruptcy estate to pay these funds to team makers, whether team makers could have sued RSI apart from the bankruptcy based on that date, based on what we've asserted in our claim. So I don't know that the trustee is contesting that. Mr. Anderson, this is Judge Neal. I'll take a third crack at this because I think we're all trying to get an understanding of exactly what your argument is. Put aside for a moment the latches argument. We understand your argument in that regard. I think what Judge Dowling, certainly what Judge Sheldine is getting at is how can we decide, separate and apart from the bankruptcy court, that team makers had a claim against debtor on the petition date. So much of what gave rise to team makers' claim is based upon events that took place long after the filing of the case. So it seems to me, and this is what Judge Sheldine was trying to get at, was the first thing that's going to have to be done is a determination that team makers had a claim against debtor on the petition date. I don't believe that has been developed before the bankruptcy court. And getting back to Judge Dowling's point, how do we make that decision? We can't make findings. And I don't think the bankruptcy court made any findings for us to review regarding that. So if you prevail on one or the other of your arguments, how is anything other than remand going to be the remedy? Excuse me, there are five minutes left. I'll continue on that point because I think a lot of this goes to what the trustee had received, and I don't want to put words in Mr. Burke's or Mr. Taylor's mouth as far as let's resolve this at that point. I think it's with respect to the validity of their claim on the date of the petition goes to a reading of the statute. In that regard, there would be no facts in dispute. It would be a purely legal argument, although we did bring up at the last minute some contractual issues. But with respect to the date of the petition we advocated in our brief, it's based on a reading of the takeout statute. It was a legal interpretation that it should go to the charitable organization. I don't think with respect to that there are facts in dispute. I think that's maybe why the trustee is advocating that position. But I'll let them set that out. But I guess if that's the case, so be it. But I think at this point, the Latches argument does fail. It's all post-petition. If the panel decides to send it back, then we'll develop more of the record which is necessary, which may include some contractual matters until a lot of the facts are missing. But I would say that with respect to the Latches argument, that's all post-petition and based on 502B1, that's not sufficient for objection. Maybe the argument regarding the substance is at that point, but maybe the Bankruptcy Court does need to develop more facts on that. Okay. Thank you. Okay. Thank you. Mr. Kinsella? Thank you. And good morning, Your Honors. And may it please the Court. This bankruptcy case was filed over 16 and a half years ago in 2004. And at the end of 2018, it appeared to be finally over. By the end of 2018, the Bankruptcy Estate and the State of North Dakota had reached a global settlement of all of their respective claims against each other. With the State paying a lump sum settlement of over $15 million to the Estate. The Bankruptcy Court also ruled on the final three disputed claims, denying claims filed by two professional gamblers, PWE and Mr. Robert Carlson, and then partially allowing a claim filed by Ms. Bala. As a result of the Bankruptcy Court's ruling on the disputed claims, the Bankruptcy Estate is currently a solvent estate with sufficient funds to pay all claims and return the balance of funds to the debtor. However, on the last day of 2018, nearly 14 years after the State filed its first claim, the State filed its second proof of claim in this case. We now know that the State filed its claim with the goal of preventing Ms. Bala from Filing its claim, the State had a significant problem. It had already settled all claims against the debtor under the settlement agreement and signed a mutual release. So the State sought to manufacture a claim purportedly on behalf of certain charities, including a North Dakota State University athletic booster club called Team Makers. In asserting its claim, the State made multiple inconsistent and often contradictory arguments regarding the basis of its claim. And due to the State's shifting arguments, the factual and legal basis for the State's claim remains unclear to this day. The Bankruptcy Court saw through the State's charade of a claim and denied it, finding that the State lacked individual standing under the doctrine of parents patriae and denying the claim under the doctrine of latches, which is why we are here today on the State's appeal. This morning I will respond to the State's latches argument, and then I will briefly address the statutory argument raised by the trustee and discussed by the State. But before I begin, I wanted to touch at least on the parents patriae issue. It's comforting to know that the State agrees with Ms. Bala and the trustee, and that the parents patriae standing issue is really irrelevant to this appeal. The Bankruptcy Court did find that the State has separate standing through its assignment from team makers, and so the appeal of the Bankruptcy Court's denial of the parents patriae standing is irrelevant and frankly it's not clear why the State proceeded with appealing that issue. But in light of Mr. Anderson's comments today, and unless the Court has any questions, I won't spend any time on the parents patriae issue. We believe, as we explained in Ms. Bala's briefing, that the State lacks parents patriae standing and failed to produce evidence at the evidentiary hearing of a substantial harm to a significant population of North Dakota. But moving on to the latches issue, which is the main issue here on appeal. In its opinion, the Bankruptcy Court identified the three latches elements. First, there must be a delay in asserting a right or a claim. Second, the delay must not be excusable. And third, the delay must have caused undue prejudice. The Bankruptcy Court then analyzed the facts and the record and determined that all three elements were satisfied as to the State's claim, resulting in the denial of the State's claim under latches. Here on appeal, the State is not challenging the elements identified by the Bankruptcy Court, or even the application of the elements to the facts. Rather, the State is arguing two technical issues. First, the State argues that latches cannot apply to bar late filed claims in Chapter 7 cases. Second, the State contends that the Bankruptcy Court should not have considered post-petition events when applying latches. I will address each of these arguments in turn, but as an initial matter, the State did not raise either of these arguments before the Bankruptcy Court, contrary to the State's allegations in its reply brief. Nowhere in the record or the two transcripts is there an argument made by the State that latches cannot apply in a Chapter 7 case or that the Bankruptcy Court could not consider post-petition actions by the parties. In the Eighth Circuit's opinion in Ames v. Nationwide Mutual Insurance Company, the Eighth Circuit described its general rule that an appellate court should not consider arguments or theories on appeal that were not advanced in the proceedings below. Consequently, this court should not consider the State's new arguments concerning latches here on appeal. As an aside, the State attempts to excuse its failure to raise these arguments before the Bankruptcy Court by accusing Ms. Bala of filing her brief quote immediately unquote before trial. To be clear, the Bankruptcy Court scheduled the evidentiary hearing at the request of the State and the Bankruptcy Court provided additional briefing for the parties at the request of the State. The Bankruptcy Court set deadlines for when briefs were due and Ms. Bala complied with the Bankruptcy Court's scheduling order, filing her brief when it was due six days prior to the evidentiary hearing. The State had ample time to prepare arguments regarding latches prior to the evidentiary hearing. Mr. Kinsella, this is Judge Dow. Was that the first time that the latches issue was raised in the proceedings when you filed that brief? Yes, Your Honor, to a technical sense. So, Your Honor, as Ms. Bala lays out in her appellee brief, the State, or excuse me, Ms. Bala and the trustee had difficulty really responding to the State's arguments. The State's claim shifted from when it was filed at the end of 2018 to even when it was heard on May 30th at the evidentiary hearing. It began as a net proceeds argument filed by the State, which ran into, as the trustee and Ms. Bala both objected, the settlement agreement that the State had entered into with the debtor. And so, the State's basis for its claim shifted and moved. And eventually, by the time the evidentiary hearing was scheduled, the State went out and got the assignment from TeamMakers. And so, the latches argument really arose once we understood that the State was asserting a claim on behalf of TeamMakers, which the State did not have that assignment from TeamMakers until it filed its trial brief on May 10th. Did they have an opportunity after your brief was filed to file a brief before the hearing based on the schedule that was created? The scheduling order, I do not believe, explicitly provided an opportunity for the State to file an additional brief. Alright, but your point would be they did not raise it at the hearing or that they did not raise it post-hearing? Both, Your Honor. So, at the hearing, Judge Collins specifically asked the State, or discussed the latches issue with the State. The court went through the elements of latches and discussed those and heard argument from Mr. Anderson regarding the different elements. And at that time, the State did not raise any argument that latches should not be considered in a Chapter 7 or that the court shouldn't consider post-petition facts. In fact, the State actually was arguing that latches should not apply due to post-petition events. Alright, now, they argue in the alternative that even if they didn't raise it, they can still raise it now on the side of an Eighth Circuit case that gives us a standard that says that if it's purely a question of law and it's absolutely clear and no other evidence would have to be considered, we can consider it on appeal. So, what's your response to that? So, if I could respond to really the two different arguments that they raised, because I think that is much more clearly a legal argument. I think that there are potentially some fact questions. It's not clear to this day. If the State is arguing that it's late filed claim could somehow be considered a timely filed claim under 726A2C, or if it is simply a 726A3 claim, if it were to be allowed. That would probably be the only uncertain sort of claim that is not clear today. So, I would say on the 502B9 issue, I think it is much more of a straight legal issue, which we obviously believe the State does not have a good legal argument on. Regarding the post-petition fact argument, I think that becomes much more difficult because the State was arguing post-petition facts regarding its claim and why latches shouldn't apply. If the State had said to the court, Your Honor, you can't consider post-petition facts, the court could then have either had both parties develop facts regarding a potential pre-petition claim and pre-petition evidence of latches, and also could have issued the opinion and written about pre-petition facts in its opinion. And so, I think on the post-petition fact issue, it's much more relevant that it wasn't raised. And further, as laid out in the statute, the fact that the State was actually arguing post-petition events, to the extent there was an error in considering the post-petition events, it was an invited error by the State. Mr. Consola, this is Judge Chaudine. I want to ask you the same question that all three of us asked Mr. Anderson. And as to latches, that's just whether or not the claim can proceed. There's certainly statutory authority that says as long as a claim is filed prior to the trustee's final report that, you know, it's tardily filed outside of perhaps the claims bar date. But to the extent there are funds remaining in the estate, in other words surplus funds, those can be distributed first. But don't we still have the problem of this post-petition versus pre-petition conduct goes to the actual merits of the claim. And there's nothing in the record that goes to whether or not the underlying claim held by team makers is an actual claim that existed on the petition date. And so, I guess I'm confused about this post-petition, whatever happened post-petition, that, you know, the Bankruptcy Court still need to make a finding about whether or not the claim was valid. Your Honor, I'm not exactly sure and I don't want to put myself in Judge Collins' shoes to say what he was thinking. But my view and Ms. Bala's view is that the court, the trustee and Ms. Bala all struggled with trying to identify the State's claim. And the view was that latches is really a gateway procedural issue. That if the State is not permitted to bring a claim under latches, then it doesn't matter about the merits of the State's claim. The State could have a meritorious claim, but under the equitable defense of latches, that claim wouldn't be allowed to proceed. Now, on the actual issue of whether or not this claim is a claim that would have existed on the petition date, that is a really difficult issue and it's really unclear under the record. But I would argue that that is really an issue for the State. So the evidentiary hearing on May 30th was characterized as a put-up or shut-up hearing by the court. And the court said that we were going to have an evidentiary hearing. It was going to take as long as it needed to. But that was a time for everybody to bring witnesses, to put on evidence and to justify the State's claim. And so to hear this court say that it looks at the record and it's unclear if Keymakers even has a claim, I think is further indication that the State has failed to satisfy its burden regarding the claim. Thank you. Thank you, Ronna. And touching on that point a little bit further, so the State's argument is essentially that it was unaware of this claim by Keymakers, or that Keymakers was unaware of this claim until the Bankruptcy Court ruled at the end of 2018. And essentially the State has argued that the claim sort of arose at that time. That was the first time that Keymakers could bring it, because under the State's theory, that is the first time that there would have been quote-unquote net proceeds under the takeout statute. And so I think arguably the State's arguments really focus on a post-petition claim, although it's unclear what type of claim that would be. And so the court's consideration of post-petition events to determine that latches should apply, I think is appropriate if that is a post-petition claim. Now, talking about latches, it's a long-recognized affirmative defense that would be available to really any party under federal common law, under North Dakota state law, under Rule 8c of the Federal Rules of Civil Procedure, and Rule 8c of the North Dakota Rules of Civil Procedure. And then Bankruptcy Rule 7008 also explicitly makes latches applicable in certain proceedings. Excuse me, counsel. Excuse me, counsel. You have five minutes left. Thank you. So as cited by Ms. Baller's appellate brief, multiple courts have applied latches to bar claims under all chapters of the Bankruptcy Code, including Chapter 7 cases. Mr. Kinsella, this is Judge Dow. On that point, aren't almost all of those cases that you cite distinguishable? They're either under the Bankruptcy Act, they're under 13s or under 11s? Your Honor, there are two cases that were under Chapter 7, but I will acknowledge that neither of them directly addressed the issue of whether or not latches can apply in a Chapter 7 case. So both of them apply latches and then without really any discussion about whether or not they were allowed to do so. More similar to the order that we have from the Bankruptcy Court here, simply accepting that latches could apply and applying those. I would point out, too, that the State has not identified a case in which latches would not be allowed to apply in a Chapter 7. So the three cases that the State cites, In re. Jamal, In re. Feldman, and In re. Columbia-Riven, all were focused on motions for a late-filed claim to be considered a timely-filed claim. And so all three of those cases are distinguishable. And in fact, the Feldman Court recognized that there is a distinction between applying latches regarding the allowance of a claim and applying latches for a determination if a late-filed claim could be a timely-filed claim under Section 726b2c. So the State is also unable to point to any authority that would explicitly state that latches cannot apply on the allowance issue for a claim in a Chapter 7 case. Finally, I think it's important just to consider the extent to the State's argument. If you take it to its logical conclusion that for equitable defenses such as latches, courts can't consider post-petition events, that really forestalls the courts from applying equitable defenses that courts routinely do so. For instance, if a court isn't allowed to look at a release or a post-petition order that would provide for issue preclusion or collateral essapol, because that is a post-petition event, that would be a substantial departure from general bankruptcy practice and the case law. There are clearly cases that apply post-petition decisions and apply that either as collateral essapol or res judicata. And then Ms. Bala cited under Section 558 in her appellee brief the numerous cases under Section 558 that apply the offset issue and allow debtors to offset post-petition obligations against pre-petition obligations. Mr. Kinsella, this is Judge Dowd again. Didn't the Eighth Circuit in Sears clearly reject the argument you're making on Section 558? And did it not also make crystal clear that in the context of disallowance of a claim, the court cannot rely on post-petition conduct? Your Honor, I would distinguish Sears and the Eighth Circuit's opinion there from this case because Sears was looking at an alleged post-petition contractual breach that would give rise to contractual defenses that the debtor could argue that it could assert. Sears wasn't looking at an affirmative equitable defense, which I would argue is different. The equitable defenses are different than a post-petition contractual defense because they arguably begin to run the moment that a claim originates. Ms. Bala could have asserted, or I'm sorry, RSI could have asserted latches in 2005 and 2006. I apologize, in 2003 before the bankruptcy case was filed. And so it's not clear, I think it's distinguishable between a post-petition contractual defense that the Eighth Circuit was considering in Sears versus an affirmative equitable defense that would arguably run with the claim and I think is more clearly laid out in Section 558 of the Bankruptcy Code, which specifically identifies defenses that a debtor may hold and includes a list of arguably other equitable defenses, while not explicitly stating latches. Well, just on the general principle, don't you find it odd to argue that delay could affect the allowance of a claim when the statute specifically says the claim is payable as long as it's paid before the trustee begins distribution? Your Honor, I'd respectfully distinguish though between a 502B9 objection simply because a claim was filed late and an objection under latches. So a 502B9 objection to a late filed claim only looks at whether or not the claim was filed before or after the claim filing deadline. Excuse me, counsel, but your time is up. Your Honors, Ms. Bala respectfully requests that this Court affirm the Bankruptcy Court's decision and disallow the State's claim. Thank you. Thank you, Mr. Kinsella. Ms. Harrison, how much time does Mr. Anderson have left? He has a minute and a half left. Okay. With that in mind, Mr. Anderson, proceed. Mr. Anderson? Did we lose Mr. Anderson? Oh, excuse me, Your Honor. I forgot to unmute it. I would give you a hard time about that, but it's happened to me on two occasions. Your Honor, you have a minute and a half left. You may proceed. Okay. Thank you very much. The State doesn't have much to add at this point other than to state that the plain language as well as circuit cases like Sears, the plain language of 502B, the exclusive provisions, dictate that post-petition conduct does not relate to the disallowance of the claim. At best, under subsection 9, it provides a lowest priority to the claim. And even in filing our proof of claim, we never sought more than the lowest priority below the other creditors and above RSI and MS-BALA. So at the best, we have a low priority, which we never claim more than just above the debtor itself. Again, the question is, on the date of the filing, February 3rd, I believe, 2004, was the team maker's claim barred by the doctrine of latches. I've never heard an argument that it's barred as of that date. All the allegations have been since that date, particularly since 2015, more in particular. But we just ask that the court reverse the bankruptcy court's finding on the doctrine of latches with respect to team makers. That's all I have, Your Honor. Mr. Anderson, can I ask you, can you cite to me in the record the place where you made the argument that the appellee claims you didn't make below? I'd have to find that, Your Honor. I'm not sure. We've had a lot of filings, to be honest. All right. Thank you. All right. Thank you, folks. Okay. Thank you. Thank you, Your Honor. The second case up for oral argument this morning is 18-6027, N. Ray, Barbara A. Wigley, Lariat Companies, Inc. v. Barbara Wigley.